IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| SHARENA GAIL KNAPP, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:19-cv-00069-O-BP |
| § | |
| ANDREW M. SAUL, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Sharena Gail Knapp ("Knapp") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

I.  **STATEMENT OF THE CASE**

Knapp was born on June 14, 1984 and has an eleventh-grade education. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 12-1 at 27, 443. She filed for DIB and SSI on January 23, 2014, alleging that her disability began on December 25, 2013. ECF No. 19 at 5. On the alleged disability onset date, she was 29 years old, which is defined as a younger individual. Tr. 27. The Commissioner initially denied her claims on May 29, 2014 and denied them again upon reconsideration on July 31, 2014. Tr. 58. Knapp requested a hearing, which was held before

Administrative Law Judge ("ALJ") J. Dell Gordon on April 12, 2016 in Oklahoma City, Oklahoma. Tr. 58, 79, 81. The ALJ issued an unfavorable decision on August 12, 2016, finding that based on the applications for DIB and SSI, Knapp was not disabled. Tr. 55, 72.

In the decision, the ALJ employed the statutory five-step analysis and established during step one that Knapp had not engaged in substantial gainful activity since December 25, 2013, the alleged onset date. Tr. 60. At step two, the ALJ determined that Knapp had the severe impairments of degenerative disc disease, affective mood disorder/bipolar disorder, generalized anxiety disorder, borderline personality disorder, borderline intellectual functioning, and history of poly-substance abuse with recent relapse. Tr. 61. He found that Knapp had mild restrictions in activities of daily living; moderate difficulties in social functioning and concentration, persistence, or pace; and no episodes of decompensation. Tr. 61–62. At step three, the ALJ found that Knapp's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 61. He found that Knapp had

> the residual functional capacity to perform light work as defined in [20 C.F.R. §§ 404.1567(b)] and 416.967(b) except she can perform simple decisions with supervision and can interact with the general public. She can interact with supervisors and co-workers only on a superficial work basis. She can adapt to changes in [a] routine work setting.

Tr. 63. At step four, the ALJ found that Knapp was unable to perform any past relevant work. Tr. 69. At step five, the ALJ found that jobs that Knapp could perform existed in significant numbers in the national economy, so a finding of "not disabled" was appropriate. Tr. 71. On August 23, 2017, the Appeals Council remanded the ALJ's decision, directing him to consider new evidence and further consider Knapp's visual impairments. Tr. 15, 180–82.

On April 12, 2018, the ALJ held another hearing via teleconference. Tr. 15, 39. On July 31, 2018, he again found that Knapp was not disabled. Tr. 29. The ALJ employed the statutory

five-step analysis and established during step one that Knapp had not engaged in substantial gainful activity since December 25, 2013. Tr. 17. At step two, the ALJ determined that Knapp had the severe impairments of degenerative disc disease, arthritis/fibromyalgia, affective mood disorder/bipolar disorder, generalized anxiety disorder, borderline personality disorder, borderline intellectual functioning, and history of poly-substance abuse with recent relapse. Tr. 17–18. He found that Knapp had mild limitations in understanding, remembering, or applying information and in adapting or managing herself. Tr. 19–20. He found that she had moderate limitations in concentrating, persisting, or maintaining pace and in interacting with others. Tr. 20. At step three, the ALJ found that Knapp's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19. He found that Knapp had

> the residual functional capacity to perform light work as defined in [20 C.F.R. §§ 404.1567(b)] and 416.927(b) except she can perform simple tasks with routine supervision and can interact with the general public. She can interact with supervisors and co-workers on a superficial work basis and can adapt to changes in a routine work setting.

Tr. 21. At step four, the ALJ found that Knapp was unable to perform any past relevant work. Tr. 27. At step five, the ALJ found that jobs that Knapp could perform existed in significant numbers in the national economy, so a finding of "not disabled" was appropriate. Tr. 28.

The Appeals Council denied review on April 26, 2019. Tr. 1. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

**II.    STANDARD OF REVIEW**

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The

SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)–(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197–98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

"The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III. ANALYSIS

Knapp raises three issues on appeal. She claims that the ALJ erred by (1) finding that Knapp's visual impairment was not severe, (2) failing to evaluate or explain why he rejected Dr. Bartel's medical opinion, and (3) relying on VE testimony that was based on a hypothetical question that did not include all of Knapp's found functional limitations. ECF No. 19 at 1.

### A.     The ALJ did not err in finding Knapp's visual impairment non-severe.

Knapp argues that the ALJ erred by failing to use the correct severity standard under *Stone v. Heckler*. ECF No. 19 at 13–14 (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). She asserts that this error would be harmless if the ALJ proceeded beyond step two in assessing all of her impairments, but the ALJ did not do this. *Id.* at 14. Knapp argues that the ALJ failed to consider her visual impairment beyond step two, and he specifically found that it was not severe. *Id.* at 15.

The Commissioner responds that SSR 85-28 incorporates the *Stone* standard, so the ALJ complied with *Stone* by citing that ruling. ECF No. 20 at 2–3. He contends that the *Stone* standard only applies when the ALJ decides the case at step two, and here, the ALJ made his determination at step five. *Id.* at 3. The Commissioner also argues that the court should not question the ALJ's claim that he considered all of the evidence. *Id.* at 3–4. In her reply brief, Knapp further argues that SSR 85-28 does not set forth the *Stone* standard, and the ALJ failed to note her allegations of visual limitations while assessing the RFC. ECF No. 21 at 1–3.

At step two of the sequential analysis, the ALJ must consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii) (2020). To comply with this regulation, the ALJ "must determine whether any identified impairments are 'severe' or 'not severe.'" *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)(ii), (c)). To evaluate whether a claimant's medical condition qualifies as a "severe impairment," the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2020). The Fifth Circuit has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1102–05. Instead, the Fifth Circuit established in *Stone* that an impairment is

6

not severe only when it is a "slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (internal punctuation and quotation marks omitted). To prevent the regulatory standard for severity from limiting a claimant's rights, the Fifth Circuit held in *Stone* that it would "assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Id.* at 1106.

Here, when stating the severity standard, the ALJ did not cite to *Stone*, but he cited to another opinion of the same effect: SSR 85-28. Tr. 16. This Social Security Ruling states:

> An impairment or combination of impairment is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities).

SSR 85-28, 1985 WL 56856, at *3. Some courts refer to this standard as the "minimal effect" standard. *Stahl v. Berryhill*, No. 1:16-CV-0173-BL, 2018 WL 1444396, at *3 (N.D. Tex. Mar. 2, 2018) (citing SSR 85-28, 1985 WL 56856, at *3). The ALJ incorporated SSR 85-28 into his severity standard, as follows:

> An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work ([20 C.F.R. §§ 404.1522] and 416.922; Social Security Rulings (SSRs) 85-28 and 16-3p).

*Id.*

For years, courts have disagreed on whether SSR 85-28 incorporates the standard set forth in *Stone*, and the Fifth Circuit has not directly resolved the issue in a published opinion. *Saenz v. Berryhill*, No. 1:18-CV-156, 2019 WL 4061551, at *8 (S.D. Tex. July 15, 2019); *Mills v. Berryhill*, No. 4:16-CV-0331-Y-BL, 2017 WL 3972009, at *4–9 (N.D. Tex. Aug. 3, 2017), *rec. adopted*, No. 4:16-CV-331-Y, 2017 WL 3891391 (N.D. Tex. Sept. 6, 2017). One line of cases, illustrated by *Scroggins v. Astrue*, has adopted the view that the *Stone* severity standard does not allow for any interference with work ability, not even minimal interference, so the "minimal effect" standard does not incorporate *Stone*. *Id.*; *see Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009); *Sanders v. Astrue*, No. 3:07-CV-1827-G (BH), 2008 WL 4211146, at *7 (N.D. Tex. Sept. 12, 2008). The contrary view is exemplified by *Acosta v. Astrue*, which concluded that the Fifth Circuit views the *Stone* standard "as providing an allowance for a minimal effect on ability to work without also rendering the impairment severe." 865 F. Supp. 2d 767, 782 (W.D. Tex. 2012).

In 2010, the Fifth Circuit upheld the "minimal effect" standard in an unpublished opinion, citing *Stone* in its reasoning. *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) (citing *Stone*, 752 F.2d at 1101). In recent years, this Court has adopted the *Acosta* view, which is consistent with *Brunson*. *See id.*; *Stahl*, 2018 WL 1444396, at *3; *Mills*, 2017 WL 3972009, at *9; *Flowers v. Berryhill*, No. 7:16-CV-00135-O-BP, 2017 WL 2257596, at *5 (N.D. Tex. Apr. 18, 2017), *rec. adopted*, No. 7:16-CV-00135-O, 2017 WL 2225411 (N.D. Tex. May 22, 2017). Accordingly, the undersigned concludes that the ALJ properly incorporated the *Stone* standard when he cited SSR 85-28. Because the ALJ used the correct severity standard and thoroughly explained his reasoning in finding Knapp's visual impairment not severe, Knapp has not shown that he committed reversible error on this issue.

Even if the ALJ had used an incorrect standard, he noted at step five—after finding that Knapp can perform three occupations—that "even if the claimant's vision impairment was severe, at least one of these jobs has no requirement for near or far visual acuity and likewise does not require regular depth perception." Tr. 28. This shows that even if the ALJ had found Knapp's visual impairment severe, it is inconceivable that he would have reached a different administrative conclusion, which is the standard for harmless error. *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citations omitted) ("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error."). Therefore, because any error would have been harmless, the Court may not reverse on this issue.

**B.    The ALJ's failure to explain why he rejected Dr. Bartel's medical opinion was reversible error.**

In her second issue, Knapp argues that the ALJ improperly rejected Dr. Danny Bartel's medical opinion without an explanation, and the opinion conflicts with the RFC finding. Tr. 651; ECF No. 19 at 22. She further argues that the ALJ's error in rejecting Dr. Bartel's opinion was not harmless because an ALJ's failure to address an examining physician's medical opinion "makes it impossible to know whether the ALJ properly considered and weighed [the] opinion, which directly affects the RFC determination." ECF No. 19 at 23 (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 761–62 (5th Cir. 2017)).

In his response, the Commissioner argues that because Dr. Bartel's opinion is from more than a year before the alleged disability onset date, it is not relevant evidence. ECF No. 20 at 7. He argues further that although the ALJ did not explicitly discuss Dr. Bartel's opinion, he said he considered all of the evidence, and the court should take that statement as true. *Id.* In her reply brief, Knapp argues that boilerplate language about carefully considering the record is not a valid explanation for rejecting a medical opinion. ECF No. 21 at 4. She contends that if the ALJ rejected

9

Dr. Bartel's opinion because it was issued before the alleged onset date, he should have stated that rationale in his decision. *Id.* at 4–5.

Although an ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion," he "cannot reject a medical opinion without an explanation." *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Dr. Bartel's July 24, 2012 opinion meets this definition, and neither party argues otherwise. Danny Bartel, M.D., is an acceptable medical source under 20 C.F.R. § 416.902(a)(1), and his opinion noted Knapp's symptoms, including her inability to stay awake or concentrate; her diagnoses, including narcolepsy and attention deficit disorder; a prognosis of "good" and a likelihood that her impairments will produce "good days" and "bad days;" and her ability to sit or stand for 30 minutes at a time and bend and twist at the waist during 20 percent of an eight-hour workday. Tr. 651–54. He examined her on June 20, 2012. Tr. 636; ECF No. 19 at 22.

Courts generally should give more weight "to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(1)) (internal quotation marks omitted). "[M]edical opinions may not be ignored just because they predate the disability onset date." *Davidson v. Colvin*, 164 F. Supp. 3d 926, 941–42 (N.D. Tex. 2015) (agreeing with the conclusions from other circuit courts—the 1st, 6th, 7th, 8th, and 10th—that "an ALJ may not simply ignore medical opinions because they pre-date the onset of disability or post-

10

date the last insured date, since that evidence can be relevant to a claim of disability."). The issue in *Davidson* concerned the medical opinion of a treating physician, but the court reasoned, in review of 20 C.F.R. § 404.1527(c)(2), that an "ALJ is required to consider *all medical opinions* in the record" and that the "regulations do not provide any exception to that requirement for opinions that pre-date a claimant's onset date." *Id.* at 941 (emphasis in original).

Here, the ALJ did not discuss Dr. Bartel's July 24, 2012 opinion, dated almost a year and a half before Knapp's alleged onset date of December 25, 2013. Tr. 60, 651–54; *see* Tr. 15–29. The ALJ did not explain why he rejected the opinion, and while he stated that he considered all of the evidence, "boilerplate language about carefully considering the entire record does not constitute an explanation for rejecting a medical opinion." *Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017); *see* Tr. 15–29. The ALJ erred by failing to explain why he rejected Dr. Bartel's opinion.

"In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Davidson v. Colvin*, 164 F. Supp. 3d 926, 944 (N.D. Tex. 2015) (citing *Bornette v. Barnhart,* 466 F. Supp. 2d 811 (E.D. Tex. 2006)). To determine whether the ALJ's error was harmless, the court must determine whether it is inconceivable that the ALJ would have reached a different administrative conclusion if he had considered Dr. Bartel's medical opinion.

Dr. Bartel's opinion contradicts the ALJ's RFC assessment concerning Knapp's ability to stand and walk. The ALJ found in the RFC that Knapp can perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Tr. 21. SSR 83-10 interprets these regulations and states that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5–6. Dr. Bartel

11

concluded that Knapp can only stand or walk for a total of less than two hours in an eight-hour workday. Tr. 652. Therefore, his medical opinion contradicts the ALJ's RFC assessment. Because there is no discussion from the ALJ resolving this apparent inconsistency, the fact that the ALJ failed to discuss Dr. Bartel's medical opinion—only citing it to point out that the record does not contain complaints from Knapp about her degenerative disc disease—"makes it impossible to know whether the ALJ properly considered and weighed [the] opinion, which directly affects the RFC determination." *Kneeland*, 850 F.3d at 761–62; Tr. 23. At the April 12, 2018 hearing, the ALJ asked the VE a hypothetical question that accounted for Dr. Bartel's finding that Knapp can only stand or walk for two hours in a workday, but it is well established that "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); Tr. 44; *see Winston v. Berryhill*, 755 F. App'x 395, 401 (5th Cir. 2018). Thus, if the ALJ had properly considered Dr. Bartel's opinion that Knapp could not stand or walk for six hours in an eight-hour workday, then it is not inconceivable that he would have reached a different result. Accordingly, the ALJ's error was not harmless, so the decision is not supported by substantial evidence, and remand is appropriate.

      **C.**      **The ALJ did not commit reversible error in questioning the VE.**

Knapp argues that vocational expert ("VE") testimony is only substantial evidence if it is based on a hypothetical question that "reasonably incorporates the disabilities recognized by the ALJ." ECF No. 19 at 23 (quoting *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994)). She argues that a defective hypothetical question is reversible error and here, the question failed to reasonably incorporate all of the limitations recognized by the ALJ. *Id.* at 24. Knapp contends that her RFC limited her to performing "simple tasks," but when the ALJ asked the VE the hypothetical question at the April 12, 2016 hearing, he said "simple decisions." *Id.*; *see* Tr. 95. Knapp further argues that

12

although "an ALJ may not rely on a hypothetical without giving the claimant an opportunity to correct deficiencies in the question," a defective hypothetical question "is not excused by a plaintiff's failure to correct the errors if the plaintiff is not afforded a 'fair' opportunity to correct any error." ECF No. 19 at 25 (citing *Ellis v. Astrue*, No. 7:09-CV-70-O-BF, 2010 WL 3422872, at *6 (N.D. Tex. July 27, 2010), *rec. adopted*, 2010 WL 3398257 (N.D. Tex. Aug. 27, 2010)).

In response, the Commissioner argues that if the Court were to reverse based on the difference between "simple tasks" and "simple decisions," this would improperly elevate form over substance. ECF No. 20 at 8–9. He further argues that Knapp fails to demonstrate, or claim, that if the ALJ had said "simple tasks" instead of "simple decisions" in the VE question, the VE would not have found that Knapp could perform the three jobs she listed at the hearing. *Id.* at 9. The Commissioner also points out that Knapp did not raise this issue at the hearing. *Id.*

"An ALJ may rely on the testimony of a [VE] to determine whether jobs exist in the national economy that a claimant can perform." *Detwiler v. Astrue*, No. 5:10-CV-00194-BG, 2012 WL 569188, at *4 (N.D. Tex. Jan. 19, 2012), *rec. adopted,* No. 5:10-CV-00194-C-BG, 2012 WL 589577 (N.D. Tex. Feb. 22, 2012) (citing *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995)). This Court has noted:

> When an ALJ bases a determination of non-disability on the testimony of a [VE] in response to a hypothetical question, the hypothetical question is defective and constitutes reversible error if either of the following is true:
> 1. The hypothetical question did not incorporate reasonably all disabilities of the claimant recognized by the ALJ, or
> 2. The claimant or his representative was not afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [VE] any purported defects in the hypothetical question (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question).

*Id.* at *4–5. Because the hearing at issue occurred on April 12, 2016, the RFC relevant to that hearing is stated in the ALJ's first decision dated August 12, 2016, not his second decision dated July 31, 2018. Tr. 58, 63, 72; *see* Tr. 15–29. In the ALJ's first decision, he found that Knapp had the RFC to "perform simple decisions," which is the same phrase the ALJ used in his hypothetical question to the VE at the 2016 hearing. Tr. 63, 95. Knapp has failed to show that the ALJ's question did not reasonably incorporate all of her disabilities recognized by the ALJ. Further, Knapp's attorney was given the opportunity to correct deficiencies in the ALJ's question. After the ALJ questioned the VE, he asked Knapp's attorney if he had "[a]ny additional questions" for the VE. Tr. 95–96. Knapp's attorney asked the VE one question and then stated that he had no additional questions. Tr. 96. Because neither of the above requirements for reversible error are met, the undersigned concludes that the Court may not reverse on this issue.

## IV.   CONCLUSION

Because substantial evidence in the record did not support the ALJ's decision and he committed reversible error by failing to explain why he rejected Dr. Bartel's medical opinion, the undersigned **RECOMMENDS** that Judge O'Connor **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely

incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

    Signed on June 12, 2020.

                                            Hal R. Ray, Jr.
                                            UNITED STATES MAGISTRATE JUDGE